# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| ROBERT PAUL TAYLOR | CIVIL ACTION NO. 22-5210 |
| | SECTION P |
| VS. | |
| | JUDGE DAVID C. JOSEPH |
| SHERIFF RICKY JONES, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Plaintiff Robert Paul Taylor, a prisoner at Elayn Hunt Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately August 31, 2022, under 42 U.S.C. § 1983.[1]  He names the following defendants: Sheriff Ricky Jones, City of St. Joseph, Tensas Parish Detention Center ("TPDC"), Warden Pat W. Smith, Assistant Warden Nolan Bass, Dr. Janna Carpenter Chauvin, Nurse Frazier, Nurse Harvey, Lieutenant Robert England,

---

[1] Plaintiff's first and second pleadings are deficient and therefore inoperative because he exceeded the pleading page limit when he attached 196 mostly handwritten pages to his form Complaint.  Local Rule 3.2 provides: "After completely filling out the form, the prisoner may attach additional pages containing additional information.  However, the number of attached pages is limited to no more than five typewritten or ten legible handwritten pages.  The pages shall be written or typed on one side of the page only. . . . Complaints that do not comply with this rule and which are not corrected after notice may be stricken by the court."  Local Rule 3.2 is not always enforced; however, the Court will enforce the Rule here because Plaintiff's filings constitute a flagrant violation.

After notifying Plaintiff of the deficiency, the Court instructed Plaintiff to cure the deficiency by re-filing his claims and allegations in a complaint which complies with Local Rule 3.2.  [doc. # 11].  The Court further instructed Plaintiff to "include a separate description of what each defendant did to violate his constitutional rights[,] . . . include the dates and locations of each action or omission, and . . . arrange his allegations and claims in chronological order to the best of his ability."  *Id.*

Corporal Washington, an unidentified insurance company, and Nurse Whitney.[2]

For reasons below, the Court should retain the following claims:

(1) that Dr. Janna Carpenter Chauvin canceled Plaintiff's prescribed or recommended medications in "early July 2020"[3] and later at TPDC;

(2) (i) that Warden Pat W. Smith, Dr. Chauvin, Nurse Frazier, and Nurse Harvey canceled Plaintiff's "scrotal scopic work-up" scheduled for August 31, 2021, and (ii) that Smith, Frazier, Harvey, and Warden Bass refused to transport him to University Health Shreveport on August 31, 2021, delaying his appointment until November 31, 2021;

(3) that on November 14, 2021, Defendants England and Washington failed to protect Plaintiff from other attacking inmates, utilized excessive force, failed to provide constitutionally adequate medical care, and failed to provide decontamination measures after spraying him with mace;

(4) that Warden Smith, Warden Bass, and Sheriff Jones, in their individual capacities, failed to protect Plaintiff from England and Washington's uses of force on November 31, 2021;

(5) that England and Washington committed tortious acts under state law, including battery, excessive force, and failure to protect;

(6) that Sheriff Jones is vicariously liable for Washington and England's alleged tortious conduct under state law; and

(7) Plaintiff's direct action against the unidentified insurance company.

The Court should dismiss the following:

(1) claims against TPDC;

(2) claim that Plaintiff did not receive his prescription medications in September 2020;

---

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[3] A constitutional claim of denial of medical care does not accrue until medical attention if provided. *Boswell v. Claiborne Par. Det. Ctr.*, 2015 WL 6161810, at *2 (5th Cir. Oct. 21, 2015) (finding that it was "not clear from the face of" the complaint that the claim was prescribed because the plaintiff "pleaded a continuing violation based on a failure to provide needed and requested medical attention."); *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980).

(3) the City of St. Joseph;

(4) claim that Corporal Washington utilized excessive force on January 26, 2021;

(5) claim that Washington placed him in administrative segregation for ten days;

(6) claims against Nurse Whitney;

(7) claim that Lieutenant England assaulted him on February 26, 2021;

(8) claim that England and Washington arranged for inmates to attack him or otherwise conspired with the attacking inmates;

(9) claims against Warden Smith and Sheriff Jones in their official capacities; and

(10) claim that Sheriff Jones maintained negligent hiring practices.

## <u>Background</u>

Plaintiff sustained a "serious injury" to his testicle in 2019. [doc. # 14, pp. 9-10]. He first claims that in "early July 2020" Dr. Chauvin canceled his regimen of prescribed medications, including Tramadol, Bactrim, Flomax, and Neurontin, which were recommended by urologists for his pain. [doc. #s 12, p. 5; 14, p. 5]. Plaintiff states that Chauvin knew he had a testicle injury and that he was previously treated at five hospitals for a ruptured epididymis, a punctured scrotum, and a mass growth on his testicle. [doc. # 14, p. 3]. Chauvin allegedly described Plaintiff "as malingering which means faking illness . . . ." *Id.* at 5.

Plaintiff's injuries—a "ruptured epididymis[,]" a pierced scrotum, hypertension, urinary blockage, and a scrotal mass—worsened in September 2020, when he was injured by officers at Bayou Correctional Center ("BCC").[4] [doc. #s 12, p. 4; 14, p. 3]. The injuries all caused him

---

[4] Plaintiff's September 2020 injuries were the subject of a separate lawsuit, *Robert Paul Taylor v. Bayou Correctional Center, LLC*, 3:21-cv-3295 (W.D. La. June 23, 2022).

excruciating pain.  [doc. # 12, p. 4].  He appears to claim here that he did not receive his prescription medications in September 2020, after officers injured him.  [doc. # 14, p. 5].

Plaintiff claims that Corporal Washington utilized excessive force on January 26, 2021. [doc. # 14, pp. 1-2].  Washington handcuffed Plaintiff and forced him to stand "face forward" against a cement wall.  *Id.* at 2.  Washington choked Plaintiff and pushed Plaintiff's head against the cement wall.  *Id.*  Then, Washington and other officers threw Plaintiff against a cement floor, causing him excruciating pain in his right testicle, which was already swollen because of a cyst. *Id.*

Plaintiff claims that Washington placed him in "administrative segregated lockdown for ten (10) days without any disciplinary court . . . ."  *Id.*

Plaintiff claims that following the uses of force described above, and while he was in administrative segregation for ten days, he did not receive any medical care.  *Id.*  He needed care for his swollen abdomen, inability to urinate, cramps, high blood pressure, and blood in his urine. *Id.* at 3.  He appears to fault Nurse Whitney, alleging that he asked her for emergency medical care as she "made her rounds passing out medicine."  *Id.* at 2.  Whitney allegedly refused to respond to Plaintiff's request.  *Id.*

Plaintiff claims that Lieutenant England assaulted him on February 26, 2021, in Dr. Chauvin's office.  [doc. # 12, p. 4].  England "grabbed" Plaintiff's handcuffs and "yanked" him out of a chair.  *Id.*

Also on February 26, 2021, Plaintiff went to University Health-Shreveport.  [doc. # 14, p. 3].  There, someone scheduled a "scrotal scopic work-up" for August 31, 2021.  *Id.*

On March 22, 2021, Plaintiff was transferred to TPDC.  *Id.* at 5.  He states that Dr. Chauvin, Lieutenant England, and Corporal Washington worked at BCC and TPDC.  *Id.*

Plaintiff claims that at TPDC, Dr. Chauvin "denied all of his needed prescribed medications and offered Tylenol instead[.]" [doc. #s 12, p. 5; 14, p. 5]. He suggests that Chauvin did not review any of his urology records. [doc. # 12, p. 5].

Plaintiff claims that Warden Pat W. Smith, Dr. Janna Carpenter Chauvin, Nurse Frazier, and Nurse Harvey canceled his "scrotal scopic work-up[.]" [doc. # 12, p. 2]. Plaintiff claims similarly that Smith, Frazier, Harvey, and Bass "all opined that [he] was malingering" and refused to transport him to University Health Shreveport on August 31, 2021. [doc. # 12, pp. 4-5]. His appointment was re-scheduled for November, 2021.[5] [doc. # 14, p. 4].

On November 14, 2021, three pre-trial inmates in B-Tier stabbed Plaintiff in the neck and hit him with a metal lock. [doc. # 12, p. 7]. He bled profusely. *Id.* He "believes the beating . . . was an arrangement [the inmates] made with Officers England and Washington who were always being cool with these three inmates." [doc. # 14, p. 7].

Plaintiff claims that England and Washington failed to protect him, waiting nine minutes before entering B-Tier. [doc. #s 12, pp. 7, 10; 14, p. 6]. England and Washington were "monitoring the problematic inmates for approximately nine minutes, waiting that long before they breached the B-tier locked door and entered the tier coming exactly to" Plaintiff's location. [doc. # 14, p. 6]. Plaintiff was bleeding, disoriented, and unstable. *Id.*

Plaintiff claims that England and Washington then used excessive force on him. [doc. # 12, p. 7]. England hit him in the forehead above his right eye and sprayed mace in his face. *Id.* Washington slammed him against a metal door, pushing him inside Cell 16. *Id.* at 7-8. He fell against a cement floor. *Id.* at 8.

---

[5] Plaintiff claims his appointment was scheduled for November "31," 2021, but there are only 30 days in November.

Plaintiff claims that England and Washington did not provide any decontamination measures after spraying him with mace. *Id.* He could "barely breathe from the mace[.]" *Id.* He was placed in a cell which lacked a shower, and he was not given any new clothes. [doc. # 14, p. 7]. He also faults England for failing to provide any medical care after the inmates beat him. [doc. #s 12, p. 8; 14, pp. 6-7].

Plaintiff claims that Warden Smith, Warden Bass, and Sheriff Jones failed to protect him from England and Washington, alleging that he told them in October 2021 that England and Washington "were sadistic and violent and had hurt [him] at BCC on [February 26, 2021, and March 15, 2021]." *Id.* at 8-9. He "wrote a letter to Sheriff Jones himself complaining about R. England and Washington . . . ." *Id.* at 10. He told Smith and Bass that he feared for his safety. [doc. # 14, pp. 5, 9]. He "strenuously" reported that England and Washington previously assaulted him. [doc. # 12, p. 8]. He claims that Smith and Bass did "absolutely nothing[.]" [doc. # 14, pp. 5, 9]. He suggests that he later informed Smith that England and Washington had entered his cell, threatened him because of his previous lawsuit against Washington, and stated that they were "going to make [his] life doing time harder than ever before." *Id.* at 6.

At an appointment in late November 2021 at University Health-Shreveport, Plaintiff was seen by a urologist who told him that "it was too late and too dangerous to perform any surgical procedure and it was best to leave the mass swelling inside [his] right testicle alone[.]" [doc. # 14, pp. 4-5]. He suggests that the urologist also told him that he would suffer excruciating pain and that his cyst would swell even larger. *Id.* at 5. He never received his "scrotal scopic work-up." [doc. # 14, p. 4].

Plaintiff claims that Warden Smith maintains a policy or custom at TPDC which "is inadequate and dangerous because she relies on employee(s) who are not trained which caused

violations of [Plaintiff's] rights. [sic]." [doc. # 12, p. 7]. Plaintiff states that "policy, practice, or custom allowed [England and Washington] to be employed and remain employed after he wrote an ARP-Step 1 complaining of what they did to [him] at TPDC[.]" *Id.* He suggests that because of a policy, his grievance was not investigated, and it was not made "certain they were not able to hurt [him] (which they did)." *Id.*

Plaintiff alleges that England and Washington "were not screened at all" when they applied for employment. *Id.* at 9. He claims that Sheriff Jones failed to screen England and Washington's employment applications and failed to "have adequate hiring practices." *Id.* at 10.

Plaintiff seeks compensation. *Id.* at 11.

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[6] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."

---

[6] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148,

152-53 (5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint."  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone.  *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted).  Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions."  *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. TPDC

Plaintiff names TPDC as a defendant.  Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."  Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership."  LA. CIV. CODE art. 24.

TPDC does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against TPDC.

## 3. Duplicative Claim

Plaintiff's injuries—a "ruptured epididymis[,]" a pierced scrotum, hypertension, urinary blockage, and a scrotal mass—worsened in September 2020, when he was injured by officers at BCC. [doc. #s 12, p. 4; 14, p. 3]. He appears to claim here that following the injuries in September 2020, he did not receive his prescription medications. [doc. # 14, p. 5].

"IFP complaints may be dismissed as frivolous pursuant to § 1915(d) when they seek to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the IFP plaintiff." *Wilson v. Lynaugh*, 878 F.2d 846, 850 (5th Cir. 1989). Likewise, a case is duplicative if it involves "the same series of events" and allegations of "many of the same facts as an earlier suit." *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988). Moreover, "it is malicious for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff." *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (internal quotation marks omitted); *see Lewis v. Sec'y of Pub. Safety & Corr.*, 508 F. App'x 341, 344 (5th Cir. 2013); *Bailey*, 846 F.2d at 1021 ("[A]n IFP complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under . . . section 1915(d)."). District courts are "'vested with especially broad discretion' in determining whether such a dismissal is warranted." *Bailey*, 846 F.2d at 1021.

Plaintiff's claim here is substantially similar to, and arises from the same series of events as, allegations in a proceeding he filed before: *Robert Paul Taylor v. Bayou Correctional Center, LLC,* 3:21-cv-3295 (W.D. La. June 23, 2022). In his previous proceeding, Plaintiff claimed that "he was denied medications at least 14 times while in isolation from 9/16/2020-9/23/2020." *Id.* at Doc. 11, p. 5. He added, "my entire regimen of prescribed medications were [sic] delayed and not delivered during the entire seven days I remained in the isolation fourway cell . . . ." *Id.* He

claimed that a nurse "ignored and disregarded" his "diagnosed prescription plan . . . ." *Id.*

The Court should dismiss Plaintiff's claim here because it is duplicative, frivolous, and malicious.

### 4. City of St. Joseph

Plaintiff names the City of St. Joseph as a defendant, but he does not set forth any allegations against it. A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662. Here, the Court should dismiss the City of St. Joseph because Plaintiff does not raise a claim against it.

### 5. Statute of Limitations

Plaintiff claims that Corporal Washington utilized excessive force on January 26, 2021. [doc. # 14, pp. 1-2]. Washington handcuffed him and forced him to stand "face forward" against a cement wall. *Id.* at 2. Washington choked Plaintiff and pushed Plaintiff's head against the cement wall. *Id.* Washington and other officers threw Plaintiff against a cement floor. *Id.* Washington then placed him in "administrative segregated lockdown for ten (10) days without any disciplinary court . . . ." *Id.*

Plaintiff claims that following the uses of force described above, and while he was in administrative segregation for ten days, he did not receive any medical care. *Id.* He needed care for his swollen abdomen, inability to urinate, cramps, high blood pressure, and blood in his urine. *Id.* at 3. He appears to fault Nurse Whitney, alleging that he asked her for emergency medical care as she "made her rounds passing out medicine." *Id.* at 2. Whitney allegedly refused to

respond to Plaintiff's request. *Id.*

Plaintiff claims that Lieutenant England assaulted him on February 26, 2021. [doc. # 12, p. 4]. England "grabbed" Plaintiff's handcuffs and "yanked" him out of a chair. *Id.*

District courts are authorized to dismiss claims as frivolous if "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period sua sponte. *See Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999).

The statute of limitations for Section 1983 actions is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1984). Thus, Louisiana's one-year personal injury statute of limitations, under LA. CIV. CODE art 3492, applies here. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).

However, the date of accrual for a Section 1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516 (*quoting Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981)). In other words, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Brockman*, 397 F. App'x at 22.

Here, Plaintiff's first claim above—that Corporal Washington utilized excessive force on January 26, 2021—accrued on January 26, 2021. Plainly, Plaintiff knew or had reason to know

of this alleged violation the day it occurred.[7]  Plaintiff had one year from that date, or until

January 26, 2022, to file his claim.  As Plaintiff did not file this proceeding until August 31,

2022, the statute of limitations bars the claim.[8]

Plaintiff's second claim—that on January 26, 2021, Washington placed him in

"administrative segregated lockdown for ten (10) days without any disciplinary court"—accrued

at the latest on February 6, 2021, when he was no longer in administrative segregated lockdown.[9]

Plaintiff had one year from that date, or until February 6, 2022, to file his claim.  Because

February 6, 2022, was a Sunday, however, Plaintiff had until February 7, 2022, to file his

claim.[10]  As Plaintiff did not file this proceeding until August 31, 2022, the statute of limitations

bars the claim.

Plaintiff's third claim—that he did not receive any medical care while he was in

---

[7] *See Morrill v. City of Denton, Texas*, 693 F. App'x 304, 307 (5th Cir. 2017) (holding that the constitutional injury was complete on the day the alleged excessive force took place); *Armstrong v. Serpas*, 670 F. App'x 851, 852 (5th Cir. 2016).

[8] The limitations period is subject to state tolling and equitable tolling in certain circumstances, but Plaintiff does argue that his claims were tolled.  If Plaintiff contends that his claims were tolled for any reason, he may present his contention in an objection to this Report and Recommendation.

[9] "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."  *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  "But these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.*  Here, when Plaintiff entered administrative segregation, he may not have known whether the restraint he experienced was atypical and significant until the latter dates of his segregated confinement.  *See generally Arauz v. Bell*, 307 F. App'x 923, 928 (6th Cir. 2009) (declining to find that the date of accrual began when the plaintiff entered administrative segregation and reasoning that the plaintiff could not, when he first entered segregation, have known how restrictive the conditions would be or how long he would be there); *see also Street v. Vose*, 936 F.2d 38, 40 (1st Cir. 1991) (finding that a claim of detention in segregation accrued when the detention completed).

[10] *See* FED. R. CIV. PRO. 6(a)(1)(C).

administrative segregation for ten days—accrued on February 6, 2021, when he was no longer in administrative segregation.[11]  Plaintiff had one year from that date, or until February 6, 2022, 2022, to file his claim.  Because February 6, 2022, was a Sunday, however, Plaintiff had until February 7, 2022, to file his claim.  As Plaintiff did not file this proceeding until August 31, 2022, the statute of limitations bars the claim.

Plaintiff's fourth claim—that Lieutenant England assaulted him on February 26, 2021, in Dr. Chauvin's office—accrued on February 26, 2021.  Plaintiff had one year from that date, or until February 26, 2022, to file his claim.  Because February 26, 2022, was a Saturday, however, Plaintiff had until February 28, 2022, to file his claim.  As Plaintiff did not file this proceeding until August 31, 2022, the statute of limitations bars the claim.

The Court should dismiss these claims.

## 6. Arranging an Attack

On November 14, 2021, three pre-trial inmates in B-Tier stabbed Plaintiff in the neck and hit him with a metal lock.  He bled profusely.  *Id.*  He "believes the beating . . . was an arrangement [the inmates] made with Officers England and Washington who were always being cool with these three inmates."  [doc. # 14, p. 7].  Plaintiff adds that following the attack on November 14, 2021, the attacking inmates were not investigated or disciplined.  *Id.*

The Court should retain Plaintiff's claims that England and Washington failed to protect him from the attacking inmates by waiting to enter the tier and intervene.  However, the Court should dismiss Plaintiff's ostensible claim that England and Washington arranged the attack or otherwise conspired with the attacking inmates.

---

[11] Of import, Plaintiff claims only that he did not receive medical care while he was in administrative segregation.

14

To state a failure-to-protect claim, Plaintiff must allege that a defendant's inaction amounted to deliberate indifference. That is, he must allege that a defendant "knew of and disregarded a substantial risk of serious harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

"To plead a conspiracy under Section 1983, a plaintiff must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Shine v. Jones*, 743 F. App'x 566, 568 (5th Cir. 2018). "Charges as to such conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or inference . . . trifles light as air . . . will suffice[.]" *Crummer Co. v. Du Pont*, 223 F.2d 238, 245 (5th Cir. 1955).

In *Mosley v. Anderson*, 503 F. App'x 272, 274 (5th Cir. 2012), the court opined that a plaintiff "proffered no specific factual allegations that establish that the defendants knew of and disregarded a risk to his safety by orchestrating his removal from segregation and his placement in a cell where he could be exposed to an anticipated attack by [another inmate], i.e., he has not alleged any particular facts establishing that the defendants knew that [the inmate] presented a risk of serious harm and purposefully exposed Mosley to that risk." The court went on, "In effect, Mosley has proffered only his speculation that his attack was the deliberate consequence of a conspiracy involving prison officials' collaboration with an expected assailant; his speculative assertions do not sufficiently demonstrate that the defendants had adequate information to draw an inference that Mosley faced a substantial risk of attack from [the inmate] or that they ignored or exposed Mosley to that risk.") (internal citation omitted).

Here, like in *Mosley*, Plaintiff offers only speculation, alleging baldly that he "believes" that England and Washington arranged the attack. He also fails to allege that the officers and

15

inmates entered into an agreement.  At bottom, he does not provide enough detail to state a plausible failure-to-protect or conspiracy claim.[12]

### 7. Official Capacities of Warden Smith and Sheriff Jones

Plaintiff first claims that Warden Smith maintains a policy or custom at TPDC which "is inadequate and dangerous because she relies on employee(s) who are not trained which caused violations of [Plaintiff's] rights. [sic]."  [doc. # 12, p. 7].

To prevail on a failure-to-train theory under Section 1983, a plaintiff "must plead facts plausibly establishing '(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.'"  *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir.), *cert. denied,* 141 S. Ct. 376 (2020) (*quoting Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).

Here, Plaintiff's claim—essentially that Warden Smith maintained a policy of failing to train employees—is conclusory because he does not identify any deficiency in training.[13]  For example, in *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 922 (5th Cir. 2021), the plaintiff alleged only that a defendant failed to train officers to properly make a warrantless

---

[12] "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983."  *See Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019).

[13] *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective. . . . Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim.");  *Hutcheson v. Dallas Cty., Texas*, 994 F.3d 477, 483 (5th Cir. 2021) ("The complaint also asserts that '[t]he fact that this incident occurred *at all* demonstrates the obvious need for Dallas County to provide its officers with additional or different training.' That allegation is conclusory.").

arrest.  The Fifth Circuit found that the plaintiff "insufficiently pled how [the defendant] failed to train his subordinates . . . ."  *Id.*

Next, Plaintiff claims that "policy, practice, or custom allowed [England and Washington] to be employed and remain employed after he wrote an ARP-Step 1 complaining of what they did to [him] at TPDC[.]"  *Id.*  He also suggests that because of a policy, his grievance was not investigated, and it was not made "certain they were not able to hurt [him] (which they did)."  *Id.*  Plaintiff, however, does not identify any policy, practice, or custom.  Rather, he just states the effects of some unidentified action or omission.  The Court should dismiss these claims.  *See Doe v. Harris Cty., Texas*, 751 F. App'x 545, 550 (5th Cir. 2018) ("The simple allegation that a 'policy or custom' existed, without reference to a specific policy or custom, is precisely the sort of formulaic pleading that does not pass muster under *Iqbal.*"); *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.").

Next, Plaintiff alleges that England and Washington "were not screened at all" when they applied for employment.  He claims that Sheriff Jones failed to screen England and Washington's employment applications and failed to "have adequate hiring practices."  *Id.* at 1.  Again however, Plaintiff does not identify a policy.  Instead, he only describes two isolated omissions: the alleged failure to screen two employees.[14]  *See Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (finding no custom where "the complaint's only specific facts appear in the section laying out the events that gave rise to this action."); *see also Peterson v.*

---

[14] Plaintiff does not allege that either defendant personally failed to screen the two employees' applications for employment; in other words, he does not raise a claim against either defendant in their individual capacities.

*City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009) (twenty-seven complaints of excessive force against city police officers over a four-year period did not suggest a pattern so common and well-settled as to constitute a custom that fairly represented an official policy); *Clark v. Thompson*, 850 F. App'x 203, 207 (5th Cir. 2021) ("'I was treated unprofessionally' plus 'eighty-two generic complaints' does not equal facts that plausibly show a single comparable incident that would support an inference of a specific custom of violating constitutional rights.").

To the extent Plaintiff relies on the 'single-incident exception,' his claim is entirely conclusory. "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which the County may be liable." *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 462 (5th Cir. 2000). "But a plaintiff who brings a claim pursuant to this extremely narrow single incident exception must show (1) the hiring decision was made by a final policymaker, and (2) a plainly obvious consequence of the decision is a constitutional violation." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020) (quotations and citations omitted). As to the second element, a plaintiff must "provide evidence to show a strong connection between the background of [the employee/officer] and the specific violation alleged, such that he was highly likely to inflict the particular type of injury suffered." *Id.*

Here, under the first prong of the test above, Plaintiff does not allege that Sheriff Jones made the decision to hire England or Washington. Thus, the "single decision exception" does not apply. *See id.* (finding that the single decision exception did not apply because the policymaker did not screen the officer's application and did not make the decision to hire him). Even if Plaintiff met the first prong, he does not present any allegations demonstrating that it was plainly obvious, from England or Washington's background, that England and Washington were highly likely to utilize excessive force, to fail to protect Plaintiff, or to fail to provide

constitutionally adequate medical care. Plaintiff does not offer any information about the defendants' backgrounds. Thus, he does not plausibly allege what Sheriff Jones should or would have discovered in the other defendants' backgrounds.

Accordingly, the Court should dismiss Plaintiff's claims against Sheriff Jones and Warden Smith in their official capacities.

## 8. Negligent Hiring

Plaintiff claims that Sheriff Jones maintained "negligent hiring practices." [doc. # 12, p. 10].

"A claim against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis used for all negligence cases in Louisiana." *Kelley v. Dyson*, 08-1202 (La. App. 5 Cir. 3/24/09). "The elements of liability in a Louisiana negligence case are: (1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of liability or scope of protection; and (5) damages." *Gomez v. Galman*, No. 20-30508, 2021 WL 5371112, at *6 (5th Cir. Nov. 18, 2021).

Here, Plaintiff fails to identify any specific deficiency in Sheriff Jones's hiring practices. For that reason, his claim is wholly formulaic,[15] and he does not plausibly allege a breach of a duty.

## 9. Other State Law Claims

Plaintiff appears to assert several claims under Louisiana law, seeking relief for many of the same alleged actions or omissions set forth above. [doc. # 12, p. 10]. He appears to claim, for instance, that Defendants England and Washington acted in the course and scope of their

---

[15] *See Martello v. State Farm Fire & Cas. Co.*, 96-2375 (La. App. 1 Cir. 11/07/97), *writ denied sub nom. Martello v. State Farm Fire & Cas. Co.*, 98-0184 (La. 3/20/98) (finding that an allegation of "failure to properly supervise" was, absent more, conclusory).

employment when they battered him/used excessive force and failed to protect him from attacking inmates.  Thus, he appears to seek relief (1) vicariously from the acting defendants' employer and (2) via direct action against the employer's insurer.  *Id.* at 3.  Plaintiff alleges that Sheriff Jones employed Washington and England.  *Id.*

While Plaintiff's allegations are not a paragon of clarity, the Court should retain his claim that Sheriff Jones is vicariously liable for Washington and England's alleged tortious conduct under state law (including battery, excessive force, and failure to protect).  *See Gomez v. Galman*, 2021 WL 5371112, at *6 (5th Cir. Nov. 18, 2021) ("An employer may be held vicariously liable for the tortious acts of its employees only when they are performed 'in the exercise of the functions in which they are employed.'").  Likewise, the Court should retain Plaintiff's direct action against the unidentified insurance company, the alleged insurer of England, Washington, and Sheriff Jones.[16]

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that the following be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted:

(1) Plaintiff Robert Paul Taylor's claims against Tensas Parish Detention Center;

(2) Plaintiff's claim that he did not receive his prescription medications in September 2020;

---

[16] Under Louisiana's 'direct action' statute, the injured person has "a right of direct action against the insurer . . . ."  La. Rev. Stat. § 22:1269.  "The statute 'does not create an independent cause of action against the insurer, it merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured.'" *New England Ins. Co. v. Barnett*, 465 F. App'x 302, 309 (5th Cir. 2012) (*quoting Descant v. Adm'rs of Tulane Educ. Fund*, 639 So.2d 246, 249 (La. 1994)).

(3) the City of St. Joseph;

(4) Plaintiff's claim that Corporal Washington utilized excessive force on January 26, 2021;

(5) Plaintiff's claim that Corporal Washington placed him in administrative segregation for ten days;

(6) Plaintiff's claims against Nurse Whitney;

(7) Plaintiff's claim that Lieutenant England assaulted him on February 26, 2021;

(8) Plaintiff's claims that Defendants England and Washington arranged for inmates to attack him or otherwise conspired with the attacking inmates;

(9) Plaintiff's claims against Warden Smith and Sheriff Jones in their official capacities; and

(10) Plaintiff's claim that Sheriff Jones maintained negligent hiring practices.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 5th day of April, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge