UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ROBERT PAUL TAYLOR** | CIV. ACTION NO. 3:22-05210 SEC. P |
| **VERSUS** | JUDGE DAVID C. JOSEPH |
| **RICKY JONES, ET AL.** | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a Motion for Summary Judgment [doc. # 64] filed by Defendants, Sheriff Rickey Jones, Pat W. Smith, Nolan Bass, Nurse Frazier, and Nurse Harvey. The motion is opposed. For reasons set forth below, IT IS RECOMMENDED that the Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART.

## Background

On or about August 31, 2022, Plaintiff pro se Robert Paul Taylor ("Taylor"), who, during the relevant period, was incarcerated at the Bayou Correctional Center ("BCC") and Tensas Parish Detention Center ("TPDC"), filed the instant, *in forma pauperis* Complaint to vindicate his civil rights under 42 U.S.C. § 1983. *See* Amend. Compl. & 2nd Amend. Compl [doc. #s 12, 14]. He named various Defendants, including, Sheriff Ricky Jones, City of St. Joseph, TPDC, Warden Pat W. Smith, Assistant Warden Nolan Bass, Dr. Janna Carpenter Chauvin, Nurse Frazier, Nurse Harvey, Roosevelt England[1] ("England"), Marzavian Washington[2] ("Washington"), an unidentified insurance company, and Nurse Whitney. *Id*.

On April 5, 2023, the undersigned conducted an initial review of Taylor's "operative"

---

[1] England was sued as, "Robert England" or "R. England."

[2] Washington was sued as "Corporal Washington."

pleadings and recommended dismissal of various claims and parties, but recommended that the Court retain the following claims:

> (1) that Dr. Janna Carpenter Chauvin canceled Plaintiff's prescribed or recommended medications in "early July 2020" and later at TPDC;
>
> (2) (i) that Warden Pat W. Smith, Dr. Chauvin, Nurse Frazier, and Nurse Harvey canceled Plaintiff's "scrotal scopic work-up" scheduled for August 31, 2021, and (ii) that Smith, Frazier, Harvey, and Warden Bass refused to transport him to University Health Shreveport on August 31, 2021, delaying his appointment until November 31, [sic] 2021;
>
> (3) that on November 14, 2021, Defendants England and Washington failed to protect Plaintiff from other attacking inmates, utilized excessive force, failed to provide constitutionally adequate medical care, and failed to provide decontamination measures after spraying him with mace;
>
> (4) that Warden Smith, Warden Bass, and Sheriff Jones, in their individual capacities, failed to protect Plaintiff from England and Washington's uses of force on November 31, [sic] 2021;
>
> (5) that England and Washington committed tortious acts under state law, including battery, excessive force, and failure to protect;
>
> (6) that Sheriff Jones is vicariously liable for Washington and England's alleged tortious conduct under state law; and
>
> (7) Plaintiff's direct action against the unidentified insurance company.

(Report and Recommendation ("R&R") [doc. # 16]). On April 20, 2023, the District Court adopted the R&R and entered a corresponding judgment. (Judgment [doc. # 17]).

Meanwhile, on April 5, 2023, the undersigned ordered service upon the remaining Defendants. *See* Service Order [doc. # 15]. On June 30, 2023, the U.S. Marshals Service ("USMS") perfected service on several Defendants. *See* Returns of Service [doc. # 19]. On July 21, 2023, Defendants, Sheriff Rickey Jones (hereinafter, "Sheriff Jones"), Pat W. Smith, Nolan Bass, and Nurse Harvey filed their responsive pleading. (Answer [doc. # 21]). Consequently, on February 8, 2024, the Court issued an initial scheduling order in the matter.

2

(Sched. Order [doc. # 50]).

Defendant Nurse Frazier, who was not served until later, filed a responsive pleading on February 29, 2024. (Answer [doc. # 54]). In light of Nurse Frazier's subsequent appearance in the case, the Court issued a superseding scheduling order on March 5, 2024, that harmonized deadlines in the case to include a July 3, 2024 deadline for the completion of discovery and an August 7, 2024 deadline for the parties to file either a motion for summary judgment or a statement of issues. (Sched. Order [doc. # 55]).

Furthermore, because Defendants England and Washington no longer work at the BCC, the court took additional steps to obtain valid addresses to secure proper service upon them. *See* doc. #s 20, 27-30. Thereafter, the USMS successfully served England and Washington on September 12, 2023. *See* Returns of Service [doc. # 32].[3]

Defendant Janna Chauvin also no longer works at the TPDC. Despite efforts to obtain a forwarding address for Chauvin, neither the Court nor Taylor was able to discern a valid address. Accordingly, on April 12, 2024, the undersigned recommended dismissal of Taylor's claims against Chauvin. *See* April 12, 2024 Report and Recommendation [doc. # 58]. On April 29, 2024, the District Court adopted the Report and Recommendation and dismissed Taylor's claims against Chauvin, without prejudice. (April 29, 2024, Judgment [doc. # 59]).

On August 7, 2024, Defendants Sheriff Rickey Jones, Pat W. Smith, Nolan Bass, Nurse Frazier, and Nurse Harvey (collectively, "Movants") duly filed the instant motion for summary judgment seeking dismissal of Taylor's claims against them. They contend that they cannot be liable for any alleged actions by Defendants England and Washington that purportedly occurred

---

[3] Despite proper service, Defendants, England and Washington, failed to appear. Accordingly, after prompting by the court, Taylor applied for and obtained entries of default against England and Washington on December 14, 2023. *See* doc. #s 34, 38, 40, 42-43.

on November 14, 2021, because, by that time, both England and Washington no longer were employed at the TPDC. They further assert that they were not responsible for the postponement of Taylor's urology appointment from August 31, 2021, to November 30, 2021, and, in any event, Taylor was not substantially harmed by the three-month delay.

On October 3, 2024, Taylor filed a lengthy opposition to the motion for summary judgment. (Pl. Opp. Brief [doc. # 70]).

On October 18, 2024, Movants filed their reply brief. (Defs. Reply Brief [doc. # 71]).

On December 13, 2024, the Court granted Taylor leave to file a sur-reply brief. *See* E-Order [doc. # 73]). Accordingly, the matter is ripe.

## Summary Judgment Standard

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is

4

unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

Finally, when a movant bears the burden of proof on an issue, he must establish "beyond

5

peradventure[4] all of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish his right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Analysis

Movants aptly categorize Taylor's claims into two sets of events: (1) failure to protect, excessive force, denial of medical care, and respondeat superior claims arising from the alleged November 14, 2021 incident; and (2) delayed medical care claims arising from the rescheduling of Taylor's August 13, 2021 appointment. The Court will address the arguments pertaining to each set of claims in turn.

**I.     Claims Related to the Actions of Roosevelt England and Marzavian Washington on November 14, 2021**

The undersigned previously set forth Taylor's claims relating to the November 14, 2021, incident, as follows,

> [o]n November 14, 2021, three pre-trial inmates in B-Tier stabbed Plaintiff in the neck and hit him with a metal lock. [doc. # 12, p. 7]. He bled profusely. *Id*. He "believes the beating . . . was an arrangement [the inmates] made with Officers England and Washington who were always being cool with these three inmates." [doc. # 14, p. 7].
>
> Plaintiff claims that England and Washington failed to protect him, waiting nine minutes before entering B-Tier. [doc. #s 12, pp. 7, 10; 14, p. 6]. England and Washington were "monitoring the problematic inmates for approximately nine minutes, waiting that long before they breached the B-tier locked door and entered the tier coming exactly to" Plaintiff's location. [doc. # 14, p. 6]. Plaintiff was bleeding, disoriented, and unstable. *Id*.
>
> Plaintiff claims that England and Washington then used excessive force on him. [doc. # 12, p. 7]. England hit him in the forehead above his right eye and sprayed

---

[4] I.e., beyond doubt.

6

mace in his face. *Id*. Washington slammed him against a metal door, pushing him inside Cell 16. *Id*. at 7-8. He fell against a cement floor. *Id*. at 8.

Plaintiff claims that England and Washington did not provide any decontamination measures after spraying him with mace. *Id*. He could "barely breathe from the mace[.]" *Id*. He was placed in a cell which lacked a shower, and he was not given any new clothes. [doc. # 14, p. 7]. He also faults England for failing to provide any medical care after the inmates beat him. [doc. #s 12, p. 8; 14, pp. 6-7].

Plaintiff claims that Warden Smith, Warden Bass, and Sheriff Jones failed to protect him from England and Washington, alleging that he told them in October 2021 that England and Washington "were sadistic and violent and had hurt [him] at BCC on [February 26, 2021, and March 15, 2021]." *Id*. at 8-9. He "wrote a letter to Sheriff Jones himself complaining about R. England and Washington . . . ." *Id*. at 10. He told Smith and Bass that he feared for his safety. [doc. # 14, pp. 5, 9]. He "strenuously" reported that England and Washington previously assaulted him. [doc. # 12, p. 8]. He claims that Smith and Bass did "absolutely nothing[.]" [doc. # 14, pp. 5, 9]. He suggests that he later informed Smith that England and Washington had entered his cell, threatened him because of his previous lawsuit against Washington, and stated that they were "going to make [his] life doing time harder than ever before." *Id*. at 6.

(R&R [doc. # 16]).

Movants contend that the foregoing incident could not have happened, as described, because, by early November, 2021, both England and Washington no longer were employed at the TPDC. In support of their argument, they adduced copies of two separation notices, one each for England and Washington, detailing that they last worked for the "Tensas Detention Center" on November 1 and 4, 2021, respectively. (MSJ, Exhs. B & C [doc. #s 64-4-5]). Movants also submitted a declaration from Warden Bass who averred that England and Washington were not employed at the TPDC on November 14, 2021. (Decl. of Warden Nolan Bass; MSJ, Exh. A [doc. # 64-3]).

Taylor, however, contends that the separation notices were created by Movants to serve their own purposes and mean absolutely nothing. (Pl. Opp. Memo., pg. 8 [doc. # 70]). He

7

reiterated, under penalty of perjury, every word in his complaint and in his amended complaints. *See* Robert Paul Taylor Decl., Pl. Opp. Memo., pgs. 141-147. He further explicitly disputed that England and Washington were not employed at the TPDC on November 14, 2021. (Pl. Opp. Memo., pgs. 156-157).

In their reply brief, Movants argue that Taylor failed to offer any evidence to overcome their showing that Washington and England no longer were employed at the TPDC on November 14, 2021. They emphasize that "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 290 (5th Cir. 2020) (citation omitted). Furthermore, "a party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite scenario." *Eagan v. Walgreen Co.*, 21-20352, 2022 WL 683636, at *3 (5th Cir. Mar. 8, 2022) (citation omitted).

The foregoing notwithstanding,

> "self-serving" affidavits and depositions may create fact issues even if not supported by the rest of the record. Where self-interested affidavits are otherwise competent evidence, they may not be discounted just because they happen to be self-interested. Indeed, [e]vidence proffered by one side to . . . defeat a motion for summary judgment will inevitably appear "self-serving." But self-serving evidence may not be discounted on that basis alone. How much weight to credit self-interested evidence is a question of credibility, which judges may not evaluate at the summary judgment stage.

*Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160–61 (5th Cir. 2021) (internal citations and quotation marks omitted).

8

The Court is unable to conclude that the record is so overwhelming that no reasonable trier of fact could credit Taylor's representation that England and Washington were present and working on November 14, 2021. Taylor was familiar with both England and Washington because he had encountered them at the BCC before his transfer to the TPDC. Furthermore, it is possible that England and Washington were employed in another capacity on November 14, 2021, but still present at the TPDC. In short, Taylor has created a genuine dispute of material fact regarding England and Washington's presence for the events that transpired on November 14, 2021, which suffices to defeat the basis for Movants' summary judgment motion as to these claims.[5]

## II. Postponement of Treatment for Taylor's Swelling and Hydrocele

The Court previously summarized this claim as follows,

> [p]laintiff claims that Warden Pat W. Smith, Dr. Janna Carpenter Chauvin, Nurse Frazier, and Nurse Harvey canceled his "scrotal scopic work-up[.]" [doc. # 12, p. 2]. Plaintiff claims similarly that Smith, Frazier, Harvey, and Bass "all opined that [he] was malingering" and refused to transport him to University Health Shreveport on August 31, 2021. [doc. # 12, pp. 4- 5]. His appointment was re-scheduled for November, 2021. [doc. # 14, p. 4].

(R&R [doc. # 16]).

Movants contend that they were not responsible for the rescheduling of Taylor's urology appointment. In support of their motion, they adduced evidence to show that Taylor's August 13, 2021 urology appointment at LSU-Health Shreveport was rescheduled by someone named Rendy Allen, who was not a jail employee, and, instead, believed to be an employee of the urology clinic. (Declaration of Deirdra Harvey; MSJ, Exh. E [doc. # 64-7]). Taylor

---

[5] Of course, the undersigned expresses no opinion as to the ultimate merits of Taylor's claims in this regard, only that to rule in Defendants' favor at this stage requires a credibility determination which is not appropriate at the summary judgment stage.

subsequently was transported to his urology appointment on November 12, 2021, where he was seen and scheduled for a follow-up appointment on May 20, 2022. *Id*.; *see also* eCeptionist Resch. Sheet and After Visit Summary; MSJ, Exhs. F-G [doc. #s 64-8-9]).

In his response to the motion for summary judgment, Taylor stated that, on August 27, 2024, he went to LSU Health-Shreveport where the medical records director assured him that the hospital had not canceled his surgical procedures. (Pl. Opp. Memo., pgs. 146-147). Thus, he maintains that there is a genuine dispute of material fact regarding who canceled his appointment scheduled for August 13, 2021. *Id*., pg. 148. He further stated that he had authorized his urologists to proceed with a scrotal-scopic workup on August 13, 2021, and if he had received reasonable care for his condition, then it would not have deteriorated to the point that it is today. *Id*., pgs. 145-146. Taylor does not dispute that he was taken to his urology appointment on November 12, 2021. *Id*., pg. 164. By then, however, his urological team told him it was too late to proceed. *Id*. As of August 27, 2024, Taylor's health remains at risk because the cyst continues to grow, causing him throbbing and excruciating pain. *Id*., pg. 161.

The Court finds that Taylor has adduced evidence to create a genuine dispute of material fact regarding who postponed his August 13, 2021 urology appointment. Nonetheless, "[a] prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) (citations omitted). Thus, to establish liability for inadequate medical care under the Eighth Amendment, an inmate must adduce facts which "clearly evince" a serious medical need and the prison official's deliberate indifference to it.

10

*Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Grogan v. Kumar*, 873 F.3d 273, 278 (5th Cir. 2017) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In his response to the motion, Taylor attached medical records which, contrary to his allegations, establish that he did not suffer any substantial harm as a result of a three-month postponement of his urology appointment. For example, on November 12, 2021, Taylor was seen by Harrison Torres, M.D., at Ochsner LSU Shreveport. (Pl. Opp. Brief, Exh. D, pgs. 56-59). Dr. Torres noted that Taylor had some right-sided spermatocele that had been slowly increasing for several years but had been stable since the spring. *Id*. Overall, Torres noted that it was not very bothersome, though Taylor occasionally experienced some scrotal pain. *Id*. Torres advised Taylor to wear compression shorts, take Ibuprofen 800 mg. three times per day, and to use ice packs twice per day or, more frequently, if he had time. *Id*.

On May 20, 2022, Taylor saw Molly Day, a physician's assistant. (Opp. Brief, Exh. D, pg. 45-50). Taylor reported that he was concerned about his right testicle, which was swollen, maybe slightly larger, and had turned hard. *Id*. Although he had some mid-stream urinary hesitancy, he ultimately felt that he emptied well. *Id*. Taylor was compliant with dual therapy. *Id*. He denied dysuria, UTI's, and discharge. *Id*. He also denied left testicle pain and had no

11

other complaints that day. *Id*. Imaging was obtained of the scrotum, which showed a large, right spermatocele versus epididymal head cyst, 1 cm larger than the last image. *Id*.

With regard to Taylor's spermatocele, Day noted that there was a slight increase in size from February 2021. *Id*., pg. 5, pg. 49. She reviewed the matter with Dr. Fuselier and discussed options with Taylor, including observation versus surgical management. *Id*. She discussed with Taylor that surgery did not guarantee resolution of pain and that pain might recur or worsen. *Id*. Day documented that, at that time, Taylor wanted to continue conservative treatment. *Id*. She added that they could reevaluate at the next visit. *Id*. Taylor was to return in six months. *Id*.

Upon consideration, the medical records adduced by Taylor refute any suggestion that the three-month postponement of his urology appointment from August-November 2021 caused him to suffer any substantial harm. There is no indication in the treatment records that the postponed appointment caused Taylor to miss his opportunity to remove the cyst. Rather, he opted to pursue conservative treatment. Moreover, Taylor later was scheduled for surgery for the condition following a December 11, 2023 urology appointment. *See* Pl. Opp. Brief, Exh. E, pgs. 81-82.

Given the lack of evidence in Taylor's objective medical records to support a finding that he suffered substantial harm as a result of the three-month delay, there certainly is nothing to suggest that any Defendant was aware of facts sufficient to infer that Taylor was at a substantial risk of serious harm by purportedly delaying his urology appointment by three months. *See Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020); *Martinez v. Bowers*, Civ. Action No.23-0768, 2024 WL 1703086, at *6 (S.D. Tex. Apr. 19, 2024) (because the record evidence does not

12

show that plaintiff suffered any harm, much less substantial harm, from the alleged delay in receiving medical care, he cannot establish a claim for deliberate indifference against the officers).

In sum, the evidence of record establishes that no reasonable trier of fact could return a verdict in favor of Taylor finding that Warden Pat W. Smith, Nurse Frazier, Nurse Harvey, and Warden Bass were deliberately indifferent to a substantial risk of serious medical harm faced by Taylor as a result of a three-month postponement of his August 31, 2021 urology appointment. Consequently, Defendants Smith, Frazier, Harvey, and Bass are entitled to summary judgment as to Taylor's inadequate medical care claim. *See Anderson, supra* (to survive a defendant's motion for summary judgment, a plaintiff must present evidence from which the trier of fact might return a verdict in his favor).

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the Motion For Summary Judgment [doc. # 64] filed by Defendants Sheriff Rickey Jones, Pat W. Smith, Nolan Bass, Nurse Frazier, and Nurse Harvey be GRANTED IN PART, and that Plaintiff Robert Paul Taylor's claims under 42 U.S.C. § 1983 related to his postponed August 31, 2021 medical appointment asserted against Defendants, Pat W. Smith, Nolan Bass, Nurse Frazier, and Nurse Harvey be DISMISSED WITH PREJUDICE.[6]

IT IS FURTHER RECOMMENDED that the Motion For Summary Judgment [doc. # 64] otherwise be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties

---

[6] These are the lone remaining claims against Nurses Frazier and Harvey. Therefore, this recommended dismissal will terminate them as parties in the case.

13

have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before she makes a final ruling.

      **A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

      In Chambers, at Monroe, Louisiana, on this 17th day of December, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE